IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 8:04CR543 |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM |
| vs. ) | AND ORDER |
| ) | |
| JOHN R. OTTE, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the Report and Recommendation (Filing No. 38) issued by Magistrate Judge Thomas D. Thalken recommending that the motion to suppress (Filing No. 21) and supplemental motion to suppress (Filing No. 32) filed by the Defendant, John R. Otte, be granted in part and denied in part. Otte filed a statement of objections to the Report and Recommendation (Filing No. 39) and supporting brief (Filing No. 40) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

Otte is charged in a one-count Indictment with being a felon in possession of a firearm. Otte seeks an order suppressing statements made to law enforcement during the early morning hours of October 21, 2004,[1] arguing that the statements were made involuntarily and that they were the fruit of an unlawful arrest.

Following an evidentiary hearing on the Motions, Judge Thalken issued a Report and Recommendation in which he determined: Otte was illegally detained when he was first taken to OPD headquarters for questioning; after officers interviewed Jette Gillette they had reasonable articulable suspicion to detain Otte, and at this point Otte's investigatory detention began; the length of the investigatory detention was not unreasonable; once

---

[1] Otte gave statements on two occasions during the relevant time period.

8:04-cr-00543-LSC-TDT Doc # 41 Filed: 06/30/05 Page 2 of 6 - Page ID # 145


officers interviewed Troy Rickard and located the gun in question they had probable cause to arrest Otte; Otte's initial statement was not sufficiently an act of free will to purge the taint of the illegal detention, and the initial statement should be suppressed; Otte was given his *Miranda* rights before making his second statement, and given the totality of the circumstances, Otte's second statement given at 7:45 a.m. was sufficiently an act of free will to purge the taint of the illegal detention and should not be suppressed.

Otte objected to the Magistrate Judge's Report and Recommendation.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

The Magistrate Judge provided a detailed account of the events leading up to Otte's detention, arrest and questioning. The Court has considered the transcript of the hearing conducted by the Magistrate Judge on March 29, 2005 (Filing No. 37). The Court also carefully viewed the evidence. (Filing No. 36.) For the reasons discussed below, the Defendant's objections to the factual statement are denied, and the Court adopts Judge Thalken's statement of the facts in its entirety.

## ANALYSIS

**FACTUAL ISSUES**

Otte objects to the following factual findings: 1) page 6 - he arrived in the interview room at OPD central station at approximately 1:00 a.m.; and 2) page 10 - the officers involved in the questioning were not the same officers involve din the illegal detention.

With respect to the time of Otte's arrival in the interview room, the Report and Recommendation specifically states in pertinent part: "*The time periods involved in this matter are not precise*. However, the defendant was located in the interview room from *approximately* 1:00 a.m. until his second interview at approximately 7:45 a.m." (Filing No. 38, at 6 (emphasis added)). Moreover, on cross-examination defense counsel ascertained that at 11:00 p.m. Otte was at the Econo Lodge hotel, and at some unspecified time between 11:00 p.m. and 1:00 a.m. he was transported to OPD central station. (Tr. 28-29.) In other words, the evidence does not demonstrate that Otte was in the OPD interview room between 11:00 p.m. and 12:00 a.m., as argued in the objections. The Court agrees with Judge Thalken that specific times were not testified to at the hearing or otherwise presented. The objection is denied.

The Defendant also objects to the statement on page 10 of the Report and Recommendation that "[t]he officers involved in the questioning were not the same officers involved in the illegal detention." Officer Martin testified that he gave Otte his *Miranda* rights and questioned him, but that he was not present at the hotel or during Otte's transportation to OPD station. (Tr. 29.) The objection is denied.

3

**LEGAL CONCLUSIONS**

Otte's objections to Judge Thalken's legal conclusions are addressed in accordance with the manner in which they were framed in the supporting brief.

***Reasonable Articulable Suspicion After Interviewing Gillette***

Otte argues that Otte's illegal initial detention did not become a lawful investigatory detention after Gillette was interviewed, as Gillette stated only that Otte was found in a hotel room inhabited by Rickard (the burglary suspect), and Gillette saw Otte with a shotgun.

More fully, the facts known to officers after the Gillette interview are as follows. Officer Martin testified that she knew Otte had possessed a shotgun, and she knew he had placed the shotgun under a love seat in his aunt's home, and she knew the location of the home. She also stated that she knew both Otte and Rickard had possessed firearms. Officers knew that a shotgun had been stolen during the burglary they were investigating, and they suspected that the shotgun Otte hid in his aunt's house was the stolen shotgun. Officers drove Gillette to the area she described, and she pointed out the residence of Otte's aunt. (Tr. 16-17.)

These facts, alone or in context with the totality of the circumstances, certainly gave rise to reasonable articulable suspicion that Otte might have been involved in criminal activity. *United States v. Maltais,* 403 F.3d 550, 553 (8th Cir. 2005) (quoting *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 21 (1968))). In his objections, Otte's attorney attempts to argue that the known facts are insufficient to support reasonable suspicion. The argument might be well taken in the context of a probbale

4

cause situation; however, as stated previously, under the circumstances the facts known to officers after the Gillette interview clearly provided reasonable suspicion sufficient to justify Otte's further detention. The objection is denied.

### *Fruit of Unlawful Arrest*

Otte also argues that Otte's second statement at 7:45 a.m. given after the administration of his *Miranda* rights were the fruit of Otte's initial illegal detention and should be suppressed.

The Eighth Circuit has summarized the applicable standards as follows:

> Statements that result from an illegal detention are not admissible. *United States v. Ramos,* 42 F.3d 1160, 1164 (8th Cir.1994). The causal chain between an illegal arrest and a statement given later is broken, however, "if the statement is 'sufficiently an act of free will to purge the primary taint.' " *Id.* (quoting *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). "The giving of Miranda warnings, followed by the making of a voluntary statement, does not, in and of itself, mandate a statement's admissibility." *Id.* Instead, to decide whether a confession is the product of a free will, courts consider Miranda warnings, the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct. *Id.*

*United States v. Hernandez-Hernandez,* 384 F.3d 562, 565 (8th Cir. 2004).

The fact that Otte was given his *Miranda* rights before the second statement is highly relevant, though not determinative. Several overnight hours had passed between Otte's initial detention and the second statement. However, Otte was not questioned during most of this time. Rather, he gave a short statement early and then his second statement at 7:45 a.m. immediately following his *Miranda* warnings. Officers continued to investif=gate the burglary during this time, they interviewed Rickard and Gillette and drove with Gillette to the residence where Otte had hidden the shotgun. The purpose and of the

5

initial detention was to hold Otte while the burglary was investigated, and the flagrancy of the misconduct was not egregious. In their entirety, the factors weigh against Otte. The Court concludes that Otte's second statement was sufficiently an act of Otte's free will, the taint of the initial illegal detention was purged, and Otte's second statement is not the fruit of the initial illegal detention. The objection is denied.

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (Filing No. 38) is adopted in its entirety;

2. The Statement of Objections to the Report and Recommendation (Filing No. 39) is denied;

3. The Defendant's Motion to Suppress (Filing No. 21) is granted in part and denied in part as follows:

    a. the motion is granted as to Otte's first statement at approximately 1:00 a.m.; and

    b. otherwise, the motion is denied.

DATED this 30th day of June, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge